UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **JOSE PEDRO SANTOS BARROS** ) | Civ. No. ___1:21-cv-10318___ | |
| *Plaintiff-Petitioner,* ) | | |
| ) | | |
| v.  ) | FEBRUARY 25, 2021 | |
| ) | **PETITION FOR WRIT OF** | |
| ANTONE MONIZ**,** Superintendent  ) | **HABEAS CORPUS PURSUANT** | |
| Plymouth County Correctional Facility  ) | **TO 28 U.S.C. § 2241** | |
| ) | **(EXPEDITED HEARING** | |
| ) | **REQUESTED)** | |
| *Defendant-Respondent.*  ) | | |

**PRELIMINARY STATEMENT**

1. Petitioner JOSE BARROS is a member of the class of immigration detainees certified by this Court in *Reid v. Donelan*, 2018 WL 5269992 (D. Mass. Oct. 23, 2018). This Court has held that Respondent's detention of Reid class members for one year without a bond hearing is likely unreasonable, and that consideration of several factors may render incarceration without a bond hearing for less than one year unreasonable as well, in violation of the Fifth Amendment. *Reid v. Donelan*, 390 F.Supp.3d 201 (D. Mass. 2019).

2. Petitioner is a civil detainee who has been incarcerated in Respondent's custody without a bond hearing since November 3, 2019. By the time this petition is heard and adjudicated, Respondent will have incarcerated him for 15 months or longer.

3. Massachusetts COVID-19 infection rates are rising. Immigration and Customs Enforcement ("ICE") has failed to provide adequate health and safety precautions to avoid spread and infection. Petitioner is at serious risk of COVID-19 infection at the Plymouth County House of Correction.

4. Petitioner hereby petitions this Court for a writ of habeas corpus to remedy his unlawful prolonged detention by the U.S. Department of Homeland Security ("DHS"). Thus, this Court should order an immediate bond hearing before an immigration judge at which the government will bear the burden of proving that Petitioner's prolonged detention is necessary to protect public safety, by clear and convincing evidence, or to prevent his flight, by a preponderance of the evidence. The immigration judge must also consider alternatives to detention.

## PARTIES

5. Respondent is currently detaining JOSE BARROS at Plymouth County Correctional Facility, 26 Long Pond Rd, Plymouth, MA 02360.

6. Respondent ANTONE MONIZ is named in his official capacity as the Superintendent of Plymouth County Correctional Facility. In this capacity, ANTONE MONIZ has custody of Petitioner because ICE contracts Plymouth County House of Correction to house immigration detainees, including Petitioner.

## JURISDICTION

7. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 2241 and Article I § 9, cl. 2 and the Fifth Amendment of the U.S. Constitution.

## VENUE

8. Under 28 U.S.C. § 2241(d), venue properly lies in the District of Massachusetts because Petitioner is physically present and in the custody of Respondent at 26 Long Pond Rd, Plymouth, MA 02360. Petitioner is also a member of the *Reid* class.

## LEGAL FRAMEWORK

9. This Court has held that "mandatory detention under § 1226(c) without a bond hearing violates due process when an alien's individual circumstances render the detention unreasonably prolonged in relation to its purpose in ensuring the removal of deportable criminal aliens." *Reid v. Donelan*, 390 F.Supp.3d 201, 219 (D. Mass., 2019).

10. The *Reid* court concluded that an individual's mandatory detention "is likely to be unreasonable if it lasts for more than one year during removal proceedings before the agency." 390 F.Supp.3d at 219. The *Reid* court furthered that although mandatory detention under § 1226(c) is *presumptively* unreasonable in violation of due process after one year, additional factors may "render mandatory detention of less than one year unreasonable." *Id.* at 220.

11. The Reid court noted several factors relevant to determining the reasonableness of an individual's prolonged detention. These include *but are not limited to*: (1) total length of detention: (2) "the foreseeability of proceedings concluding in the near future (or the likely duration of future detention)"; (3) "the period of the detention compared to the criminal sentence"; (4) "the promptness (or delay) of the immigration authorities or the detainee"; and (5) "the likelihood that the proceedings will culminate in a final removal order." *Id.* at 219.

12. In evaluating the reasonableness of prolonged no-bond detention, courts have also considered the conditions of confinement. *See, e.g.*, *Sopo v. U.S. Attorney General*, 825 F.3d 1199, 1218 (11th Cir. 2016) ("Courts conducting this reasonableness analysis have considered . . . [w]hether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention.") (internal citations omitted) (vacated on statutory grounds); *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 478 (3rd Cir. 2015) ("[W]e cannot ignore the conditions of confinement.") (internal citations omitted).

13. As held in *Reid*, "once an alien's mandatory detention has become unreasonably prolonged in violation of due process, he is entitled to a bond hearing before an immigration judge." 390 F.Supp.3d at 220.

## STATEMENT OF FACTS REGARDING PETITIONER AND HIS CURRENT IMMIGRATION DETENTION

14. Petitioner was born on ▒▒▒▒, 1986.

15. He came to the United States in 1991 at the age of five.

16. Petitioner was convicted of Breaking and Entering and Possession of a Class B substance and sentenced to an effective term of one year.

17. In 2019 he entered criminal custody in Respondent's care and was released from criminal custody in March of 2019.

18. Respondent took civil custody of Petitioner again on or about November 3, 2019. Respondents have maintained custody of Petitioner since then, for approximately fifteen months.

19. The Department of Homeland Security initiated removal proceedings against Petitioner on November 3, 2019.

20. On November 3, 2019 a Notice to Appear (NTA) was issued to Petitioner placing him in removal proceedings pursuant to Section 237 (a) (2) (B) (i) of the INA on the basis of having been convicted of a violation of a law relating to a controlled substance.

21. Petitioner was taken into DHS custody. At the Master Calendar Hearing Petitioner conceded the allegations contained in the NTA, requested Cancellation of Removal pursuant to INA § 240A(a) and voluntary departure in the alternative.

22. The Petitioner was found to be a lawful permanent resident for more than 5 years, and resided in the United States continuously for seven years after having been admitted in any

status. Petitioner has no aggravated felony convictions. Petitioner was found to be statutorily eligible for Cancellation of Removal pursuant to INA § 240A(a).

23. At the conclusion of a full merits hearing conducted over two hearing dates, the Immigration Judge (IJ) granted Petitioner's application for Cancellation of Removal pursuant to INA § 240A(a) on July 1, 2020.

24. The Department of Homeland Security filed an appeal with the Board of Immigration Appeals ("BIA") on July 17, 2020.

25. Petitioner is currently waiting for a scheduled appeal date from the BIA.

26. Petitioner remains in custody at the Plymouth County House of Corrections as he awaits a scheduled appeal date and the results of said hearing.

## CAUSE OF ACTION
### (UNREASONABLE INCARCERATION WITHOUT A BOND HEARING IN VIOLATION OF THE FIFTH AMENDMENT)

27. In *Reid*, the Court held that "when mandatory, categorical detention lasts for more than one year during agency removal proceedings, excluding any dilatory tactics attributable to the noncitizen, the delay is likely to be unreasonable." 390 F.Supp.3d at 219.

28. Under the *Reid* standard, Petitioner presents multiple factors that weigh in favor of finding his prolonged incarceration unreasonable. <u>First and most important</u>, his total length of detention is over one year and will likely surpass one year by the time this matter is adjudicated.

29. <u>Second</u>, the proceedings are unlikely to conclude in the near future. Petitioner's BIA Appeal Hearing is not yet scheduled to take place. No date has been assigned.

30. An appeal to the BIA is a process that can potentially last several more months. *See* 8 C.F.R. § 1003.1(b).

31. Should Petitioner be unsuccessful, he will also have the right to appeal the BIA's decision to the U.S. Court of Appeals for the First Circuit, a process that also can last an additional several months. *See* 8 U.S.C. § 1252(a) (statute regarding petitions for review of orders of removal); *see also Jennings*, 138 S. Ct. at 860 (Breyer, J., dissenting) (stating that class members had been detained for periods ranging from six months to 831 days while pursuing asylum).

32. <u>Third</u>, Petitioner's immigration detention has exceeded the time he served on probation for his deportable offense. Petitioner was only criminally sentenced for one year for the conviction listed on his NTA. He served that time, and with good behavior, he completed his sentence in March of 2019. By the time of the BIA hearing, Petitioner will have been held in immigration detention for 15 months, doubling the criminal sentence already served.

33. <u>Fourth</u>, Petitioner has advanced the case as quickly as possible. Petitioner's meritorious quest for relief does not constitute dilatory tactics.

34. Courts of Appeals have determined that a noncitizen is not at fault for requesting relief that the law makes available. *See*, *e.g.*, *Chavez-Alvarez*, 783 F.3d at 476 ("We cannot 'effectively punish' these aliens for choosing to exercise their legal right to challenge the Government's case against them."); *Ly v. Hanson*, 351 F.3d 263, 272 (6th Cir. 2003) ("[A]ppeals and petitions for relief are to be expected as a natural part of the process" and that an "alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him.").

35. Additionally, the Government has caused "unreasonabl[e] delays," and Petitioner's case has "languishe[d] on a docket." *Reid*, 390 F.Supp.3d at 220. When Petitioner

was detained on November 3, 2019, his Notice to Appear ordered him to appear on a date and time "to be set." He would not receive a hearing until eight months later on July 1, 2020.

36. Even after Petitioner's Cancellation of Removal request was granted by the Immigration Judge on July 1, 2020, he continued to languish in detention.

37. Fifth, it is unlikely that the proceedings will culminate in a final removal order. An Immigration Judge already granted petitioner relief on July 1, 2020. Petitioner is statutorily qualified for cancellation of removal and was granted the application as a matter of discretion. Petitioner's weighty positive equities—his new circumstance, a life free of drug use, resuscitated family ties, and mutual family support —have positively progressed since the DHS filed the appeal to the BIA, thus re-affirming the reason for the IJ's original grant of discretion.

38. Sixth, the conditions of confinement render Petitioner's detention unreasonable. Plymouth County House of Correction, where Respondents are holding Petitioner, is indistinguishable from a facility used to incarcerate those serving criminal sentences. Petitioner is held alongside the criminally incarcerated and subject to similar penal standards and rules. *See, e.g.*, César Cuauhtémoc García Hernández, *Immigration Detention As Punishment*, 61 UCLA L. Rev. 1346 (2014); *Chavez-Alvarez*, 783 F.3d at 478 ("Among our concerns about deprivations to liberties brought about by section 1226(c) is the reality that merely calling a confinement "civil detention" does not, of itself, meaningfully differentiate it from penal measures.") (internal citations omitted). The location and nature of Petitioner's confinement are therefore indistinguishable from punitive, criminal incarceration.

39. Finally, additional factors make Petitioner's continued detention unreasonable. Sadly, while awaiting his continued merits hearing, Petitioner's mother passed away as a result of COVID-19 complications, leaving his elderly father alone. Petitioner's father, now a widower,

faces exceptional hardship each day that Petitioner remains in custody. The Immigration Court has already considered these humane conditions worthy of a favorable exercise of discretion. Likewise, they warrant favor to await his BIA Appeal in the United States outside the confines of the Plymouth County Correctional Facility where Petitioner's own COVID-19 risk of infection is substantially higher than had he been allowed the opportunity to properly quarantine at home.

### PRAYER FOR RELIEF

WHEREFORE, Petitioner asks that this Court grant the following relief:

(1)     Issue a writ of habeas corpus ordering a constitutionally adequate, individualized bond determination hearing by an immigration judge, at which the government will bear the burden of establishing that Petitioner's continued detention is justified on the basis of either flight risk or danger to the community, and, even if it is, that no condition or combination of conditions, such as alternatives to detention, will reasonably assure Petitioner's future appearances and the safety of the community, *Reid*, 390 F.Supp.3d at 224-5;

(2)     Order Respondent to pay Petitioner's costs; and

(3)     Grant such other and further relief as this Court deems just and proper.

Date: February 25, 2021

                                Respectfully submitted.

                                <u>/s/ Manuel R. Pires, Esq.</u>
                                RODRIGUES PIRES PC
                                BBO No. 563067
                                1212 Hancock Street, Suite LL30
                                Quincy, MA 02169
                                (617) 770-1212 • (617) 862-2121 (fax)
                                attorneypires@mac.com